mA

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLIED BUILDING PRODUCTS CORP., | |
| Plaintiff, | Civil Action No. 12 CV 6249 |
| v. | Hon. Charles R. Norgle |
| BRUCE PINSLER, and STEVEN PINSLER, | |
| Defendants. | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

In this diversity jurisdiction suit, Plaintiff Allied Building Products Corp. ("Allied") sues Defendant Bruce Pinsler ("Bruce") for breach of contract and breach of guaranty and Defendant Steven Pinsler ("Steven") for breach of guaranty. Before the Court is Allied's motion for summary judgment as to Steven pursuant to Federal Rule of Civil Procedure 56 and for attorneys' fees pursuant to Rule 54(d)(2).[1] For the following reasons, the motion granted in part and denied in part.

**I. BACKGROUND[2]**

In November of 2007, Steven, the President and shareholder of Galaxie Construction & Lumber Co., Ltd. ("Galaxie"), sold his stake in Galaxie to his brother Bruce for $500,000. Galaxie continued to pay Steven and provide benefits to him in 2008 and 2009 in accordance

---

[1] Since filing a joinder in opposition to the instant motion, Bruce has filed for personal bankruptcy. As a result, Allied now moves for relief only against Steven at this time.

[2] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements, and notes properly disputed facts within the text.

with the sale structure; however, he did not do any work for the company. While Steven was President of Galaxie, it regularly purchased construction supplies from Allied such as asphalt roofing shingles and vinyl siding. Steven claims that Galaxie never owed Allied more than $50,000 to $100,000 during his tenure with the company. Steven admits that he executed a Credit Application and Agreement containing an unconditional, continuing personal guaranty in favor of Allied, but he disputes the 2004 date of execution. Under the guaranty, invoices thirty days past due are subject to a two percent service charge per month. The guaranty has not been revoked. Allied continued to supply products on credit to Galaxie.

On April 5, 2012, Bruce, individually and as the owner of Galaxie, signed a Judgment Note in the amount of $536,370.07. On April 6, 2012, Bruce signed a guaranty. Bruce also signed a longer-form guaranty in favor of Allied. Steven claims that he has no knowledge of the purchases and agreements that Galaxie and Bruce entered into with Allied in 2012. Allied had two guarantors as of April 6, 2012.

Although Galaxie initially complied with its obligations to make installment payments under the Judgment Note, $451,275.84 remains outstanding. Additionally, Allied states that between May 23, 2012 and June 13, 2012, it shipped additional goods to Galaxie for which the principal invoice amount of $61,536.27 remains due. Steven denies this fact on the ground that the supporting exhibit includes goods shipped prior to May 23, 2012 or after June 13, 2012. This purely argumentative denial, however, does not contradict the record evidence that Allied shipped Galaxie additional goods supplied on credit, and that a balance of $61,536.27 remains due for these goods.

Allied further states that interest of $8,638.02 has accrued on the additional shipment

obligations through January 25, 2013. Steven denies this fact, arguing that the affidavit of Michelle Sparks—wherein she states that Exhibit I sets forth the service charges accrued on past due invoices through January 18, 2013—is contradicted by the Exhibit itself, which refers to a January 25, 2013 cut-off date. This response is purely argumentative. The Sparks affidavit states that as of January 18, 2013, the amount of service charges owed to Allied is $8,334.92, with an accrual rate of $43.30 per day. This is consistent with the fact submitted by Allied that $8,638.02 is owed as of January 25, 2013. In total, the amount due, owing, and unpaid by Galaxie as of January 25, 2013 is $521,450.13.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Harris N.A. v. Hershey, 711 F.3d 794, 798 (7th Cir. 2013). The Court draws all reasonable factual inferences in favor of the nonmoving party. Id. (citing Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012)). "[A] genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (internal quotation marks and citation omitted). "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient . . . ." Harris N.A., 711 F.3d at 798 (citations omitted).

### C. Procedural Challenges

Steven raises two procedural challenges to the instant motion. First, Steven argues that the motion should be denied outright because Allied fails to cite its Local Rule 56.1(a)(3)

statement in its motion or in its supporting memorandum of law. However, "litigants have no right to demand strict enforcement of local rules by district judges." Modrowski v. Pigatto, 712 F.3d 1166 (7th Cir. 2013) (Stevo v. Frasor, 662 F.3d 880, 887 (7th Cir. 2011)). To streamline the summary judgment process, Allied should have cited its Local Rule 56.1(a)(3) statement in its supporting memorandum, rather than citing directly to the record. See, e.g., Malec v. Sanford, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section should be to the 56.1(a) or (b) statement of facts only . . . ."). Notwithstanding Allied's technical failure in form, the Court is able to determine whether there is a genuine dispute of material facts in this case. Thus, in this instance, the Court declines to strike or dismiss the instant motion. See Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 655 (7th Cir. 2011) ("District courts have broad discretion to enforce and require strict compliance with their local rules." (citing Elustra v. Mineo, 595 F.3d 699, 710 (7th Cir. 2010))).

Second, Steven argues that summary judgment should be denied without prejudice because he has not had the opportunity to discover information relating to his affirmative defense of discharge. Steven, however, did not file a motion for additional time to conduct discovery; rather, he merely filed a Rule 56(d) declaration. In any event, Steven fails to show how discovery demonstrating that Allied was aware that Steven was not affiliated with Galaxie in 2011 and 2012, and that it did not rely upon Steven's guaranty would influence the outcome of the instant motion.

**D. Breach of Guaranty**

The parties agree that Allied's breach of guaranty claim against Steven is governed by Illinois law. "A guaranty is a 'third party's promise to answer for payment on or fulfill an

4

obligation if the person primarily liable fails to perform.'" Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 519 (7th Cir. 2011) (quoting Panno v. Nicolau, 529 N.E.2d 95, 98 (Ill. App. Ct. 1988)). "In a suit brought on a collateral or continuing guarantee, such as the one sued on in this case, a *prima facie* case is made when the plaintiff enters proof of the original indebtedness, the debtor's default and the guarantee." Mid-City Indus. Supply Co. v. Horwitz, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985) (citation omitted); see also Boulevard Bank Nat. Ass'n v. Philips Medical Sys. Int'l B.V., 811 F. Supp. 357, 360 (N.D. Ill. 1993); Fifth Third Bank (Chi.) v. Stocks, No. 09 C 3463, 2013 WL 593856, at *7 (N.D. Ill. Feb. 15, 2013).

Here, Allied provides the sworn affidavit of Michelle Sparks as proof that Galaxie is indebted to Allied in the amount of $521,450.13, and that Galaxie has defaulted. Allied also provides a copy of Steven's unconditional, continuing guaranty of Galaxie's indebtedness. Although Steven offers nothing to contradict Sparks's affidavit, he nonetheless contests the sufficiency of Allied's evidence as to Galaxie's debt, characterizing it as underdeveloped. Specifically, Steven argues that Allied fails to explain in its Local Rule 56.1(a)(3) statement the underlying reasons for the Judgment Note or why it allowed Galaxie to run up such a large credit balance, or offer any invoices that substantiate what Galaxie purchased from Allied. However, this argument is perfunctory and unsupported by pertinent authority; it is therefore rejected. Hess v. Kanoski & Assocs., 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotation marks and citation omitted)); see also United States v. Irons, 712 F.3d 1185 (7th Cir. 2013).

Steven also challenges Allied's proof of default, arguing that he has no personal

knowledge of Galaxie's transactions and why the accumulated debts are not paid because he has had nothing to do with the company since November 2007. But Steven's lack of knowledge or notice of Galaxie's default "is a defense which must be pleaded and proved by defendant, not plaintiff. Accordingly, any failure of proof on this issue is irrelevant in making a determination of whether plaintiff has established a *prima facie* case." Mid-City Indus. Supply Co., 476 N.E.2d at 1277. Because Allied establishes a prima facie case for the enforcement of Steven's personal guaranty, it is entitled to summary judgment unless Steven raises a question of material fact as to his affirmative defense of discharge.

**D. Discharge Defense**

Steven seeks to avoid liability on his personal guaranty based upon his mere assertion that "a guarantee entered into by the owner of a company is discharged when, as a result of a subsequent transaction, he is no longer owner." Steven Pinsler's Resp. to Allied's Mot. for Summ. J. & Att'ys' Fees 5. However, this is not the law in Illinois. "Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged." Chi. Exhibitors Corp. v. Jeepers! of Ill., Inc., 876 N.E.2d 129, 136 (Ill. App. Ct. 2007) (internal quotation marks and citation omitted)). "Whether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement." Id. (internal quotation marks and citations omitted).

The Court rejects Steven's argument to the extent he claims that Galaxie's alleged increase in credit limits and volume of business, without his knowledge, evidences a material

increase in the risk he originally undertook as a gurantor. See Phelps Dodge Corp. v. Schumacher Elec. Corp., 415 F.3d 665, 669 (7th Cir. 2005) (applying Illinois law) ("[I]t was to be expected that volume, price, interest rate, credit limits, and other terms and conditions in the sales contracts between Phelps Dodge and Horning Wire would fluctuate over the years and that Schumacher Electric would not have to be notified of every fluctuation and its guaranty would not terminate automatically if the fluctuations were normal in the sense of falling within the foreseeable range."); see also Alton Banking & Trust Co. v. Sweeney, 481 N.E.2d 769, 774 (Ill. App. Ct. 1985) (rejecting an argument that an increased volume of business resulted in an increased risk to the guarantor where the guaranty agreement contained no monetary limit on the amount of indebtedness guaranteed). The language of Steven's personal guaranty is neither ambiguous nor uncertain. It provides: "I/we jointly and severally do personally guarantee unconditionally, at all times, to Allied Building Products Corp., its subsidiaries or affiliates, the payment of indebtedness or balance of indebtedness of the within named firm." Pl. Allied Building Products Corp.'s LR 56.1(a)(1)(3) Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. Ex. A. Steven's continuing guaranty—tied to a course of dealing—was revokable at any time upon notice to Allied. See Phelps Dodge Corp., 415 F.3d at 668 (citations omitted). But Steven did not revoke his guaranty. In addition, Steven could have capped the guaranty at a specific dollar amount, or otherwise limited the guaranty. He did not do that either.

Moreover, in light of Steven's unconditional, continuing guaranty (which was revokable at will), the mere change of ownership in Galaxie does not constitute a material change in the business dealings between Galaxie and Allied so as to release Steven from his personal guaranty. See CIG Howard Commercial, LLC v. Hispanic Hous. Dev. Corp., No. 1-10-0102,

increase in the risk he originally undertook as a gurantor. See Phelps Dodge Corp. v. Schumacher Elec. Corp., 415 F.3d 665, 669 (7th Cir. 2005) (applying Illinois law) ("[I]t was to be expected that volume, price, interest rate, credit limits, and other terms and conditions in the sales contracts between Phelps Dodge and Horning Wire would fluctuate over the years and that Schumacher Electric would not have to be notified of every fluctuation and its guaranty would not terminate automatically if the fluctuations were normal in the sense of falling within the foreseeable range."); see also Alton Banking & Trust Co. v. Sweeney, 481 N.E.2d 769, 774 (Ill. App. Ct. 1985) (rejecting an argument that an increased volume of business resulted in an increased risk to the guarantor where the guaranty agreement contained no monetary limit on the amount of indebtedness guaranteed). The language of Steven's personal guaranty is neither ambiguous nor uncertain. It provides: "I/we jointly and severally do personally guarantee unconditionally, at all times, to Allied Building Products Corp., its subsidiaries or affiliates, the payment of indebtedness or balance of indebtedness of the within named firm." Pl. Allied Building Products Corp.'s LR 56.1(a)(1)(3) Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. Ex. A. Steven's continuing guaranty—tied to a course of dealing—was revokable at any time upon notice to Allied. See Phelps Dodge Corp., 415 F.3d at 668 (citations omitted). But Steven did not revoke his guaranty. In addition, Steven could have capped the guaranty at a specific dollar amount, or otherwise limited the guaranty. He did not do that either.

Moreover, in light of Steven's unconditional, continuing guaranty (which was revokable at will), the mere change of ownership in Galaxie does not constitute a material change in the business dealings between Galaxie and Allied so as to release Steven from his personal guaranty. See CIG Howard Commercial, LLC v. Hispanic Hous. Dev. Corp., No. 1-10-0102,

2011 WL 10068753, at *10 (Ill. App. Ct. Oct. 6, 2011) (rejecting guarantor's argument that the transfer of entire ownership interest constituted a significant change in business relationship because it was no longer guaranteeing the performance of an entity it controlled where the language of the personal guaranty explicitly states that the guaranty is "absolute and unconditional"). Thus, even viewing the facts in the light most favorable to Steven, and drawing all reasonable inferences in his favor, he cannot raise any genuine issues of material fact regarding discharge. Allied is therefore entitled to summary judgment against Steven for breach of guaranty.

**E. Attorneys' Fees**

Finally, Allied seeks prejudgment attorneys' fees and costs in the amount of $67,691.38 pursuant to the terms of the Judgment Note. The Judgement Note signed by Bruce, however, is not controlling as to Steven. Accordingly, Allied's motion for prejudgment attorneys' fees and costs is denied.

## III. Conclusion

For the foregoing reasons, summary judgment is granted in favor of Allied and against Steven for breach of guaranty in the amount of $521,450.13.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 23, 2013